Approved: _____

ORIGINAL

JESSICA FENDER / BENET KEARNEY / FRANK BALSAMELLO
Assistant United States Attorneys

Before:   THE HONORABLE GABRIEL W. GORENSTEIN
          United States Magistrate Judge
          Southern District of New York

**16 MAG   7320**

- - - - - - - - - - - - - - - - x
                                :
UNITED STATES OF AMERICA        :      **SEALED COMPLAINT**
                                :
          - v. -                :      Violations of
                                :      8 U.S.C.
LUIS BATISTA CASOLA,            :      §§ 1324(a)(1)(A)(v)(I)
     a/k/a "Cuba," and          :      and 1324(a)(1)(B)(i)
YOENDRIS BATISTA MATOS,         :
                                :      COUNTY OF OFFENSE:
               Defendants.      :      NEW YORK
                                :
- - - - - - - - - - - - - - - - x



SOUTHERN DISTRICT OF NEW YORK, ss.:

        LUIS SANTANA, being duly sworn, deposes and says that
he is a Special Agent with the Department of Homeland Security,
Homeland Security Investigations ("HSI"), and charges as
follows:

### COUNT ONE

        1.   In or about July 2016, in the Southern District of New
York and elsewhere, LUIS BATISTA CASOLA, a/k/a "Cuba," and
YOENDRIS BATISTA MATOS, the defendants, and others known and
unknown, intentionally and knowingly did combine, conspire,
confederate, and agree together and with each other to commit an
offense against the United States, to wit, violations of Title
8, United States Code, Section 1324(a)(1)(A)(ii).

        2.   It was a part and an object of the conspiracy that
LUIS BATISTA CASOLA, a/k/a "Cuba," and YOENDRIS BATISTA MATOS,
the defendants, and others known and unknown, knowing and in
reckless disregard of the fact that an alien had come to,
entered, and remained in the United States in violation of law,
would and did transport and move and attempt to transport and
move such alien within the United States by means of

transportation and otherwise, in furtherance of such violation
of such law, and did so for private financial gain.

    (Title 8, United States Code, Sections 1324(a)(1)(A)(v)(I)
and 1324(a)(1)(B)(i).)

        The bases for my knowledge and for the foregoing
charge are, in part, as follows:

      3.   I am a Special Agent with HSI and I have been
personally involved in the investigation of this matter.  This
affidavit is based upon my personal participation in the
investigation of this matter, my conversations with law
enforcement agents, witnesses, and others, as well as my
examination of report and records.  Because this affidavit is
being submitted for the limited purpose of establishing probable
cause, it does not include all the facts that I have learned
during the course of my investigation.  Where the contents of
documents and the actions, statements, and conversations of
others are reported herein, they are reported in substance and
in part, except where otherwise indicated.  Where figures,
calculations, and dates are set forth herein, they are
approximate, unless stated otherwise.

      4.   Since in or about June 2014, HSI has been
investigating an international criminal organization that is
suspected of smuggling undocumented and previously deported
aliens into the United States from various locations in the
Caribbean and Central and South America (the "Smuggling
Organization").  The Smuggling Organization is believed to
smuggle individuals from the Dominican Republic and other
countries through Guatemala and Mexico, among other places,
across the United States border into Texas and onward to the New
York City area.  Based on my participation in this investigation
and my conversations with other law enforcement officers, I have
learned that, generally, prior to their arrival in the United
States, these aliens are required to pay a sum of money to the
Smuggling Organization, after which the Smuggling Organization
arranges for and carries out the transportation of the
individuals into and through Mexico, across the United States
border, and to destinations throughout the United States.  I
have also learned that aliens are frequently required to make
several separate payments, in order to progress to further
destinations.

      5.   During the course of this investigation, I and other
HSI special agents have reviewed audio recordings of telephone

calls intercepted pursuant to a Court-authorized wiretap.  Based
on my review of those recordings, as well as draft transcripts
and draft translations of the calls,[1] and my conversations with
other law enforcement officers, I have learned the following, in
substance and in part:

       a.   On or about July 2, 2016, at approximately 9:20
p.m., LUIS BATISTA CASOLA, a/k/a "Cuba," the defendant, using a
certain telephone number ("Telephone-1")[2] placed a telephone call
to YOENDRIS BATISTA MATOS, the defendant, who received it using
a different telephone number ("Telephone-2").[3]  During the call,
the following communications, in substance and in part,
occurred:

| CASOLA: | Yoendris, could you still pick up people in Houston? |
|---|---|
| MATOS: | Yes. |
| CASOLA: | And do you think that she can pick up a Brazilian there and later on two more? |
| MATOS: | But we need to give her three hours' notice, but I... |
| CASOLA: | No, but right in Houston.  So that he can be picked up in Houston. |

[1] Many of the telephone calls described below were conducted,
either in whole or in part, in Spanish.  The summaries listed
below describe only portions of the conversations, are
preliminary transcriptions and/or translations of the
conversations, and are subject to revision based on further
review of the conversations.

[2] During the course of this investigation, while acting in an
undercover capacity, I have placed several telephone calls to
Telephone-1.  Based on those telephone calls, as well as my
review of documents and other intercepted communications, I
believe that Telephone-1 is used by CASOLA.

[3] Based on my review of records, I have learned that, in May
2016, MATOS supplied Telephone-2 in connection with a wire
transfer transaction.  Based on those records, as well as my
review of other intercepted communications, I believe that
Telephone-2 is used by MATOS.

| MATOS: | And where will they be staying? |
|---|---|
| CASOLA: | Listen, she can have them so that she can bring them up if she wants to bring them up. |
| MATOS: | How many are they? Are they two? I can take them. |
| CASOLA: | They are three, but only one will arrive now, and then the other two will arrive. |
| MATOS: | Okay, I'll go there then and take them with me. |
| CASOLA: | Ay. |
| MATOS: | I can take them, in the car. |
| CASOLA: | But, she will pick him up now. |
| MATOS: | I'm telling you, or maybe she can hold there, but they're five. |
| CASOLA: | Listen you can't do it, he's about to arrive. |
| MATOS: | I don't have the number... |
| CASOLA: | Listen... |
| MATOS: | I don't know if she has the same number. |
| CASOLA: | Let's see call her, and you call me back fast. |
| MATOS: | Alright. |
| CASOLA: | And you don't have any other people there who can do pick ups there? |
| MATOS: | No. |

b.    On or about July 2, 2016, at approximately 9:26 p.m., MATOS placed a telephone call to CASOLA. During the call, the following communications, in substance and in part, occurred:

| MATOS: | Listen, she doesn't answer. |
|---|---|

| CASOLA: | No, I got someone who can pick them up. |
| MATOS: | If you want, give me that *cajita*[4] and I will take it. |
| CASOLA: | But how... if there is only one, there is only one, the other ones are around, they went into a [U/I][5] in San Antonio. |
| MATOS: | Oh well the, alright then. |
| CASOLA: | I will let you know if anything. |
| MATOS: | Where you at?   The house? |

6.    Based on my training and experience, my familiarity with this investigation, and my review of other intercepted communications, I believe that, during the telephone calls described in Paragraphs 5(a) and 5(b), CASOLAS and MATOS are discussing arrangements to transport aliens who had already been smuggled over the United States–Mexican border from locations in Texas to elsewhere in the United States, including the New York area.

7.    Based on my review of audio recordings of telephone calls intercepted pursuant to a Court-authorized wiretap, as well as draft transcripts and draft translations of the calls, and my conversations with other law enforcement officers, I have learned that, on or about July 7, 2016, at approximately 10:28 a.m., LUIS BATISTA CASOLA, a/k/a "Cuba," the defendant, received a telephone call from an individual who identified himself as "Moreno." During the call, the following communications, in substance and in part, occurred:

| MORENO: | This is Moreno calling. |

---

[4] Based on my training and experience, my familiarity with this investigation, and my review of other intercepted communications, I believe that CASOLAS and MATOS use the terms *caja* or *cajita*, which translates from the Spanish to "box" and "little box" respectively, to refer to aliens who are being transported across the United States–Mexican border and then elsewhere within the United States.

[5] "[U/I]" indicates portions of the audio recording that were unintelligible to the monitor and/or transcriber.

| CASOLA: | Yes, I know. Send me the phone number for those people so I can receive your money. |
|---------|---------------------------------------------------------------------------------------|
| MORENO: | For what? |
| CASOLA: | The money that's missing. |
| MORENO: | But why if I am still here, going to give you money? |
| CASOLA: | What was that? |
| MORENO: | I'm still here. |
| CASOLA: | Right, and? |
| MORENO: | They're certain over there.  Let's wait for the departure. |
| CASOLA: | What was that? |
| MORENO: | They're certain over there, when I'm about to... when a departure is ready, then you recoup the rest. |
| CASOLA: | No, no, no.  Forget about it, the departure is for tomo— As soon as they tell me, you leave. But it doesn't work like that, the trailer arrives today.  And I'm not going to bring you up, if the money is not in full because I'm not going to pay money out of my pocket to anybody anymore. |
| MORENO: | But you're fine, once we're together and about to get on the trailer, we call so that... |
| CASOLA: | No, no no. |
| MORENO: | ...arrives in five minutes. |
| CASOLA: | It doesn't work like that.  Where's the money? |
| MORENO: | I gave more than half upfront and I'm not asking you for anything. |
| CASOLA: | No, no. |

| MORENO: | Let's get this done.  Listen, let's get this done because the money is there. |
| CASOLA: | Listen, forget about the money being there. Manny was clear with you and told you what was the deal. |
| MORENO: | Fine, fine but you have more than half, let's get this done.  Once we're on our way up... |
| CASOLA: | Wait... |
| MORENO: | ...I call and it arrives right away. |
| CASOLA: | What do you mean more than half?  You've only given me 1,900 and there are 2,100 missing. |
| MORENO: | No, no that's not what we talked about. |
| CASOLA: | No? |
| MORENO: | I was going to give you 3.3. |
| CASOLA: | No, no, no.  Ask Manny how much it is.  Nobody told me that. |
| MORENO: | No no, no it was 3.3.  It's 3.3.  But we're still here, you have not brought me up or said anything to me or taken me out... |
| CASOLA: | And I'm not going to bring you up if you don't send the full amount. |
| MORENO: | What was that? |
| CASOLA: | That the money has to be in full.  I'm not going to bring you up for you to pay me up there. |

8.    Based on my training and experience, my familiarity with this investigation, and my review of other intercepted communications, I believe that, during the telephone call described in Paragraph 7, LUIS BATISTA CASOLA, a/k/a "Cuba," the defendant, and "Moreno" are discussing the transportation of aliens who have been smuggled into the United States. Specifically, I believe that CASOLA is informing "Moreno" that

he cannot authorize "Moreno's" transportation until "Moreno" or a family member pays additional money to CASOLA.

        9.    Based on my review of audio recordings of telephone calls intercepted pursuant to a Court-authorized wiretap, as well as draft transcripts and draft translations of the calls, and my conversations with other law enforcement officers, I have learned the following, in substance and in part:

        a.    On or about July 8, 2016, at approximately 2:55 p.m., LUIS BATISTA CASOLA, a/k/a "Cuba," the defendant, placed a telephone call to YOENDRIS BATISTA MATOS, the defendant.  During the call, the following communications, in substance and in part, occurred:

| CASOLA: | Do you want to take 2 pieces to New York? |
|---------|-------------------------------------------|
| MATOS:  | Sure. |
| CASOLA: | I'll let you know as soon as they let me know so you can leave. |
| MATOS:  | All right. |
| CASOLA: | How are you going to collect? |
| MATOS:  | Who they belong to? |
| CASOLA: | From... from... over there [U/I].  I'm calling him so he can make the deposit for me. |
| MATOS:  | So you collect it right then. |
| CASOLA: | All right. |
| MATOS:  | Let me know then. |
| CASOLA: | I'll let you know. |
| MATOS:  | All right. |
| CASOLA: | Fine. |

        b.    On or about July 8, 2016, at approximately 3:43 p.m., CASOLA placed a telephone call to MATOS.  During the call, the following communications, in substance and in part, occurred:

| CASOLA: | Already. |
|---------|----------|
| MATOS: | Already?  Okay. |
|  | [VOICES OVERLAP] |
| CASOLA: | [U/I] |
| MATOS: | [U/I] yes, alright, do it. |
| CASOLA: | Listen. |
| MATOS: | Tell me. |
| CASOLA: | If you want to hold them there, to send the other 2 because if not... going up with those. |
| MATOS: | What do I do then? |
| CASOLA: | Whatever you want, that's your problem. |
| MATOS: | Alright. |
| CASOLA: | You have to give everyone the number so they can talk to you.  Because he's on his way. |
| MATOS: | Okay, and are sending more when? |
| CASOLA: | Day after tomorrow.  No, I don't know. |
| MATOS: | Okay, alright.  Send the number then. |
| CASOLA: | He have to get moving because on his way over there. |
| MATOS: | Alright. |
| CASOLA: | Alright. |

10.   Based on my training and experience, my familiarity with this investigation, and my review of other intercepted communications, I believe that, during the telephone calls described in Paragraphs 9(a) and 9(b), LUIS BATISTA CASOLA, a/k/a "Cuba," and YOENDRIS BATISTA MATOS, the defendants, are discussing the transportation of aliens who have been smuggled into the United States.  Specifically, I believe that CASOLA is asking MATOS if he can take two aliens to New York.  I also

9

believe that CASOLSA and MATOS are discussing whether payment
for those aliens will be deposited directly with CASOLA or
whether MATOS will collect the payment.

11.   Based on my review of audio recordings of telephone
calls intercepted pursuant to a Court-authorized wiretap, as
well as draft transcripts and draft translations of the calls,
and my conversations with other law enforcement officers, I have
learned that on or about July 9, 2016, at approximately 6:39
p.m., LUIS BATISTA CASOLA, a/k/a "Cuba," the defendant, received
a telephone call from an unidentified male, using the same phone
number as "Moreno" in Paragraph 7.  Based on my comparison of
the voices of "Moreno" and the unidentified male, as well as the
common telephone number, I believe the calls were made by the
same person.  During the call, the following communications, in
substance and in part, occurred:

| MORENO: | Did you receive the thing? |
|---|---|
| CASOLA: | What thing? I am waiting for the message from you that says from where it is coming, how much did they send, who sent it and everything. Listen, Monday I have a trip otherwise you are going to stay back again and I'm going to kick you out to the street. |
| MORENO: | I didn't call you because you don't like it when I call you at this number.  I was waiting to call you at your friend's number.  I'm going to call there so... |
| CASOLA: | It doesn't matter, look call there and send me the number here, so I can get the money. |
| MORENO: | Yes, but the message and pin is here... and the person who sent it... |
| CASOLA: | It's not that... is that I need from where it was sent... I need all of that.  Not just my name is such and such and here is the password... otherwise I'm going to send everything back. |
| MORENO: | Cuba, everything is there, listen, Dominican Republic, I have the information here... |
| CASOLA: | Send it to me in a message... don't talk. |

| MORENO: | To this number right? |
|---------|------------------------|
| CASOLA: | To the other number, not this one. |
| MORENO: | You have the name of who you are going to receive.... |
| CASOLA: | Send it to me with name and everything... |
| MORENO: | Alright, let me call there so she can give me the exact name of who she sent it... |
| CASOLA: | Alright, fine. |

12.  Based on my training and experience, my familiarity with this investigation, and my review of other intercepted communications, I believe that, during the telephone call described in Paragraph 11, LUIS BATISTA CASOLA, a/k/a "Cuba," the defendant, and "Moreno" are discussing payments that were made to CASOLA and others on behalf of "Moreno" so that "Moreno" could be transported within the United States.

13.  Based on my participation in this investigation, my conversations with other law enforcement officers, and my review of documents, I have learned the following, in substance and in part:

a.   On or about July 12, 2016, which was a Tuesday, at approximately 11:03 p.m., a vehicle with license plate number HJN-7080 registered on a New York City Police Department ("NYPD") license plate reader[6] on the George Washington Bridge, which connects New Jersey and Manhattan, New York.

b.   Approximately seven minutes later, a vehicle with license plate number HJN-7080 registered on an NYPD license plate reader on the Macombs Dam Bridge which connects the Bronx, New York and Manhattan, New York.

c.   On or about July 13, 2016, at approximately 11:50 a.m., a vehicle with license plate number HJN-7080 registered on an NYPD license plate reader on the Williamsburg Bridge, which connects Manhattan, New York and Brooklyn, New York.

---

[6] The state of the license plate was not recorded.

11

      d.   Approximately half an hour later, a vehicle with license plate number HJN-7080 registered on an NYPD license plate reader in the Holland Tunnel, which connects Manhattan, New York and New Jersey.

     14.  Based on my participation in this investigation, my conversations with other law enforcement officers, and my review of documents, I have learned the following, in substance and in part:

      a.   On or about July 13, 2016, at approximately 1:29 p.m., New Jersey State Police Troopers stopped a vehicle with Texas license plate number HJN-7080 (the "Vehicle")[7] in Union Township, New Jersey. YOENDRIS BATISTA MATOS, the defendant, was driving. Two other individuals ("Individual-1" and "Individual-2")[8] were also in the Vehicle.

      b.   When questioned by law enforcement officers, MATOS stated, in substance and in part, that he had driven up from Texas to have dinner with a friend in Brooklyn, New York the previous evening. MATOS stated that he had known his friend for approximately two years, but did not know his last name.

      c.   Individual-1 and Individual-2 informed officers that they had not met with anyone the previous night and had instead driven around and stayed at a small hotel. Neither Individual-1 nor Individual-2 recalled the name of the hotel.

     15.  Based on my familiarity with this investigation, my conversations with other law enforcement officers, and my training and experience, I believe that during the events described in Paragraph 13, YOENDRIS BATISTA MATOS, the defendant, and others were transporting aliens that had been smuggled over the United States-Mexico border to New York, as described by LUIS BATISTA CASOLA, a/k/a "Cuba," the defendant, in Paragraph 12 ("Monday I have a trip."). I also believe that when MATOS, Individual-1, and Individual-2 were stopped by the New Jersey State Police, as described in Paragraph 14, the aliens had already been taken to their destination in New York

---

[7] The Vehicle is registered to MATOS.

[8] Both Individual-1 and Individual-2 are Cuban nationals who requested asylum in the United States pursuant to the Cuban Refugee Adjustment Act in 2015. Those requests are currently pending and Individual-1 and Individual-2 are therefore both lawfully in the United States until a determination is made.

and that MATOS, Individual-1, and Individual-2 were returning to Texas.

WHEREFORE, I respectfully request that LUIS BATISTA CASOLA, a/k/a "Cuba," and YOENDRIS BATISTA MATOS, the defendants, be arrested and imprisoned, or bailed, as the case may be.

SPECIAL AGENT LUIS SANTANA
DEPARTMENT OF HOMELAND SECURITY
HOMELAND SECURITY INVESTIGATIONS

Sworn to before me this
14 th day of November, 2016

THE HONORABLE GABRIEL W. GORENSTEIN
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK